UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID CALDWELL | : | CIVIL NO. 3:04CV930 (SRU) |
| v. | : | CRIMINAL NO. 3:02CR54 (SRU) |
| UNITED STATES | : | March 2, 2005 |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PRO SE**
**DECLARATION PURSUANT TO 28 U.S.C. § 2255**

By pro se filing dated January 24, 2005 and filed February 11, 2005, petitioner David Caldwell has filed a "Declaration of David Caldwell in Support of Habeas Corpus Motion Pursuant to 28 U.S.C. § 2255" ("Declaration").

By pro se motion and memorandum dated filed June 7, 2004, petitioner David Caldwell moved to vacate, set aside or correct his conviction and sentence. In particular, Caldwell claimed his attorney, Alexander H. Schwartz, Esq., provided ineffective representation on this basis. The Government responded on July 23, 2004, requesting that the petition be summarily denied. On August 5, 2004, Caldwell moved to stay a decision on his petition pending the Supreme Court's review of the Sentencing Guidelines in light of Blakely v. Washington, 124 S. Ct. 2531 (2004), to which the Government responded on August 10, 2004.

Following the filing of his pro se Declaration, on February

22, 2005, the Court granted the Government's motion of February 16, 2005, ordering Mr. Schwartz to file an affidavit addressing the issue of whether Caldwell had instructed him to file a notice of appeal as Caldwell alleged.  Mr. Schwartz, thereafter, filed an affidavit dated February 28, 2005.

    1.   The Claim that His Counsel Ignored Caldwell's Instruction to File a Notice of Appeal Should <u>Be Summarily Dismissed</u>

The instant Declaration reiterates some of his prior argument (which will not be responded to again here) and also claims that his trial counsel failed to file a notice of appeal as instructed. Caldwell asserts that, "after [his] sentencing, [he] had instructed my attorney to file a notice of appeal, because I wanted to appeal my sentence, on the grounds that it was too harsh."  (Declaration at 2).  It is respectfully submitted that this claim should be denied.

At the conclusion of Caldwell's sentencing proceeding, the Court advised Caldwell that it was "required to advise [Caldwell] that you have the right to appeal.  I want to note for you that you have waived the right to appeal or collaterally attack your sentence as long as it was within the guideline range. I think that a reasonable reading of that plea agreement suggests that a sentence under the guideline range would be subject to being waived but if you believe that you have the right to appeal your sentence, I want to make sure that you understand the following: Any Notice

3

of Appeal needs to be filed within ten days of judgment and you should assume that judgment could enter as early as today." (4/9/03 Tr. at 36). Caldwell responded to the Court's inquiry that he understood the time limitations and that he also understood that if he could not afford to pay the appeal filing fees, they would be waived and counsel would be appointed to represent him on appeal. Id. No appeal was filed.

As Mr. Schwartz's affidavit makes plain, the petitioner did not instruct Mr. Schwartz to file the notice of appeal but, rather, on two occasions, specifically advised his attorney that he did not wish Mr. Schwartz to file a notice of appeal. In this regard, the Government notes that Caldwell's claim that his instructed his attorney to file a notice of appeal is further belied by the fact that no such allegation was made in his original petition which implied – if not stated – that his counsel had advised Caldwell that there were no appealable issues and, to that end and with Caldwell's knowledge, no appeal had been filed.[1]

Accordingly, on the present record, and in light of Mr. Schwartz's affidavit, the Government respectfully submits that Caldwell's claim should be summarily dismissed. See, e.g.,Rodriguez

---

[1] Mr. Schwartz's affidavit states that he never received the proffered April 4, 2004 letter. Had that letter been sent to Mr. Schwartz at or around that date, it logically should have been included as part of Caldwell's initial filing supporting a claim that, unbeknownst to him, his attorney had failed to file an appeal.

4

v. New York, 2002 WL 31251007 at *1-2 (S.D.N.Y. Oct 8, 2002) (citing cases); Davila-Bajana v. United States, 2002 WL 2022646 at *4 (E.D.N.Y. Jun. 26, 2002)(Raggi, J.)(based on defense attorney's affidavit contradicting petitioner's account, court rejected § 2255 petitioner's claim that his attorney ignored his request to file a notice of appeal, without holding a hearing); Rosa v. United States, 170 F. Supp.2d 388, 298-99 (S.D.N.Y. 2001); cf. Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001)(matter resolved on the basis of "a detailed affidavit from trial counsel credibly describing the circumstances concerning [Gonzalez's] failure to testify.").

This is particularly the case since Caldwell cannot establish prejudice even if his counsel had, arguendo, failed to file a notice of appeal. See Santana v. United States, 2005 WL 180932 at *6 (S.D.N.Y. Jan. 26, 2005)("This sworn statement cuts strongly in favor of summary dismissal of petitioner's claim that he directed his attorney to file a Notice of Appeal"; petitioner's claim would also fail since he failed to establish prejudice). As the Second Circuit has noted, "the Court held that 'to show prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, *he would have timely appealed*.'" Sarroca v. United States, 250 F.3d at 787 (emphasis in original)(citing Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000). The "would have appealed"

5

standard considers all of the circumstances, including whether there were non-frivolous issues to appeal. Id. For the reasons stated in the Government's Jul 23, 2004 Response, there was no basis to appeal his conviction and sentence and, therefore, he suffered no prejudice from the absence of an appeal.

2. Caldwell's Booker Claim is Procedurally Barred

With respect to the claim made in his Declaration requesting that his petition be granted in light of United States v. Booker, 125 S. Ct. 738 (2005), that claim is likewise, without merit.

First, Caldwell has not shown cause for failing to raise or prejudice from not having raised a challenge to the sentencing guidelines below and, therefore, any effort to obtain relief on this basis must fail. Defendants have always had the opportunity to raise a Sixth Amendment challenge to their sentences and have done so regularly since the Supreme Court's decision of Apprendi v. New Jersey, 530 U.S. 466 (2000). Accordingly, this claim has been procedurally defaulted.

Moreover, and in any event, neither Blakely nor Booker are available on a collateral review. On January 12, 2005, the United States Supreme Court, in United States v. Booker, extended the holding of Blakely v. Washington to the United States Sentencing Guidelines. Under Booker, therefore, the United States Sentencing Guidelines are no longer mandatory. The Government respectfully submits that the principle adopted in Booker, like the principle

6

adopted in Blakely, constitutes a "new constitutional rule of criminal procedure" which, under Teague v. Lane, 489 U.S. 288 (1989), is not retroactively applicable to cases (like the petitioner's) that became final before the decision was announced.

The courts which have considered the issue have uniformly held that Booker is not available to petitioners on collateral review. For example, in McReynolds v. United States, 2005 WL 237642 (7th Cir. Feb. 2, 2005), the Seventh Circuit held that "Booker does not apply retroactively to criminal cases that became final before its release on January 12, 2005. . . . Booker itself represents the establishment of a new rule about the federal system. Petitioners' convictions and sentences became final well before Booker was issued, and its approach therefore does not govern these collateral proceedings." Id. at *5; see also Humphress v. United States,, 2005 WL 433191 at **4-6 (6th Cir. Feb. 25, 2005)(Booker does not apply retroactively to cases already final on direct review); Varela v. United States, 2005 WL 367095 (11th Cir. Feb. 17, 2005)("Therefore, as the Supreme Court concluded in Schriro, we conclude that Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review."); see also, e.g., Warren v. United States, 2005 WL 165385, at *9-10 (D. Conn. Jan. 25, 2005) (Thompson, J.) (Apprendi, Blakely and Booker do not "afford[] relief" to the petitioner on collateral attack); United

7

States v. Russell, 2005 WL 281183 (E.D. Pa. Feb. 3, 2005)(Booker not retroactive); Tuttamore v. United States, 2005 WL 234368 (N.D. Ohio Feb. 1, 2005) ("To the extent that petitioner relies on Booker, he cannot so prevail, because the decision in Booker is not retroactive for purposes of § 2255 collateral attacks."); Gerrish v. United States, 2005 WL 159642 (D. Me. Jan. 25, 2005)(same); cf. Green v. United States, 2005 WL 237204 (2d Cir. Feb. 2, 2005)(motion to file second or successive application on the basis of Booker denied since Supreme Court has not explicitly made Booker or Blakely retroactive on collateral attack).

The Government respectfully submits that the Court should follow the Sixth, Eleventh and Seventh Circuit's reasoning and holdings that Booker unavailable on collateral attack. The Circuits deciding the issue have relied on Schriro v. Summerlin, 124 S. Ct. 2519 (2004), a case in which the Court considered whether Ring v. Arizona, 536 U.S. 584 (2002), applied retroactively to cases that had already become final when Ring was decided. Ring had held that because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi required the existence of such a factor to be proved to a jury rather than to a judge. Summerlin's conviction and death sentence, which was imposed under the same Arizona law that was at issue in Ring, became final long before Ring was decided.

The Supreme Court held that "Ring announced a new procedural

8

rule that does not apply retroactively to cases already final on direct review." 124 S. Ct. at 2526. The Court explained that a "new rule" resulting from one of its decisions applies to convictions that are already final only in limited circumstances. New *substantive* rules generally apply retroactively, but new *procedural* rules generally do not – only "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" are given retroactive effect. Id. at 2523 (internal quotation marks omitted). The Court concluded that Ring's holding is properly classified as procedural, rather than substantive, because it did not alter the range of conduct or the class of persons subject to the death penalty in Arizona; instead, it merely changed the method of determining whether the defendant engaged in that conduct. Id. at 2523-24. The Court also held that Ring did not fall within Teague's narrow exception for "watershed rules" of criminal procedure. To qualify as a watershed rule, the Court explained, a new procedural rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." Id. at 2523 (quoting Teague, 489 U.S. at 313) (emphasis added in Summerlin). The Court held that Ring did not announce a watershed rule of criminal procedure because it could not confidently say that judicial fact finding seriously diminishes the accuracy of capital sentencing proceedings. Id. at 2424-25.

9

Consistent with the reasoning of Summerlin, the Second Circuit had joined every other Court of Appeals to have considered the issue in holding that because Apprendi is a procedural rule that does not fall within the "watershed" exception, it was not retroactively applicable to cases on collateral review. See Coleman v. United States, 329 F.3d 77 (2d Cir.), cert. denied, 124 S. Ct. 840 (2003).[2] Importantly, the Second Circuit in Coleman held that Apprendi was not a watershed rule – not only despite the difference between using the jury and the judge as fact-finder – but also despite the difference in the two burdens of proof (preponderance-of-the-evidence v. beyond-a-reasonable-doubt).

In Coleman, the court pointed out that in order to constitute a "watershed" rule of criminal procedure, "a rule must not only improve the accuracy of criminal proceedings, but also alter our understanding of the bedrock procedural elements essential to the fairness of those proceedings. In short, it must be a

---

[2] Accord Sepulveda v. United States, 330 F.3d 55 (1st Cir. 2003); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 124 S. Ct. 458 (2003); United States v. Sanders, 247 F.3d 139 (4th Cir.), cert. denied, 534 U.S. 1032 (2001); United States v. Brown, 305 F.3d 304 (5th Cir. 2002), cert. denied, 538 U.S. 1007 (2003); Goode v. United States, 305 F.3d 378 (6th Cir.), cert. denied, 537 U.S. 1096 (2002); Curtis v. United States, 294 F.3d 841 (7th Cir.), cert. denied, 537 U.S. 976 (2002); United States v. Moss, 252 F.3d 993 (8th Cir. 2001), cert. denied, 534 U.S. 1097 (2002); United States v. Sanchez-Cervantes, 282 F.3d 664 (9th Cir.), cert. denied, 537 U.S. 939 (2002); United States v. Mora, 293 F.3d 1213 (10th Cir.), cert. denied, 537 U.S. 961 (2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001), cert. denied, 536 U.S. 906 (2002).

10

groundbreaking occurrence." 329 F.3d at 88 (internal quotation marks, alterations, and citations omitted). "Apprendi did not cut a new rule from whole cloth. It merely clarified and extended the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt." Id. at 89 (internal quotation marks omitted). This conclusion was supported by the consistent holdings of the Supreme Court and the Second Circuit that Apprendi errors may be reviewed for harmlessness, and not structural error – a conclusion that would have stood in tremendous tension with a determination that Apprendi announced a watershed rule, see id. at 89-90 – that is, one of the "small core of rules requiring the observance of those procedures that . . . are implicit in the concept of ordered liberty," id. at 88 (quoting United States v. Mandanici, 205 F.3d 519, 528 (2d Cir. 2000) (quoting, in turn, Graham v. Collins, 506 U.S. 461, 478 (1993))).

Coleman involved a determination that a change in the identity of the relevant fact-finder *and* an increase in the burden of proof were insufficient to constitute a "watershed" rule of criminal procedure. Because Booker did not entail either of those changes – but instead maintained the identity of the fact-finder at sentencing, as well as the preponderance of the evidence standard – it follows, *a fortiori*, that Booker's rule falls short of being a "watershed" rule. Indeed, as the Second Circuit recently ruled in

11

United States v. Crosby, 2005 WL 240916 (2d Cir. Feb. 2, 2005), the district court might very well have imposed the same sentence regardless of whether the Guidelines were binding (as before Booker) or advisory (after Booker), and that district judges might impose higher *or* lower sentences in Booker's wake.  In view of the fact that Booker simply restores some more measure of discretion to sentencing judges, its holding simply does not shift the foundations of American constitutional law and, hence, does not apply retroactively on collateral attack.

Booker entailed an extension of the procedural rule announced in Apprendi that factual findings that increase the maximum penalty permitted by law must be found by a jury beyond a reasonable doubt.  The Supreme Court has defined a "new rule" under Teague as one that was not "'*dictated* by precedent existing at the time the defendant's conviction became final.'" Graham v. Collins, 506 U.S. at 467 (quoting Teague, 489 U.S. at 301 (emphasis in Teague)); see Sawyer v. Smith, 497 U.S. 227, 234 (1990).  Subsequent decisions have made clear that a rule may be "new" despite the fact that earlier cases supported it, Sawyer, 497 U.S. at 236, "or even control or govern" it, Saffle v. Parks, 494 U.S. 484, 491 (1990).  Under that definition, Booker announced a new rule for Teague purposes.

Moreover, while not directly addressing the retroactivity of its extension of Blakely to the Sentencing Guidelines and its

12

holding that those Guidelines would be advisory, the "merits majority" of Booker went out of its way to clarify that its holding on the merits and the remedy of the Sixth Amendment claim was to apply "to all cases on direct review." 2005 WL 50108 at *29 (citing Griffith v. Kentucky, 479 U.S. 314, 328 (1987): "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). This statement has already been read by one court, in the context of a successive petition, as limiting the application of the rule to cases in the direct review pipeline especially in view of the fact that the Supreme Court has already concluded that Ring v. Arizona, 536 U.S. 584 (2002), a case which applied the principle of Apprendi to death sentences imposed on the basis of aggravating factors, was not to be applied retroactively to cases once they were final on direct review. See Hamlin v. United States, 2005 WL 102959 at *1 (citing Schriro v. Summerlin, 124 S. Ct. at 2519, 2526 (2004)("Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review.")); see also Stevens v. United States, 2005 WL 102958 (D. Me. Jan 18, 2005).³

---

³ One court, declining to decide whether the rule announced in Blakley/Booker applies retroactively, held that, even if those cases were retroactively applied, relief would be limited to persons presently serving a sentence that was enhanced on the basis of contested facts that were not found to be true, beyond a

13

**Conclusion**

For the reasons stated above and based upon the full record, it is respectfully submitted that petitioner's Section 2255 petition seeking to vacate his sentence should be summarily dismissed as untimely or, alternatively, denied without a hearing.

    Respectfully submitted,

    KEVIN J. O'CONNOR
    UNITED STATES ATTORNEY


    ANTHONY E. KAPLAN
    ASSISTANT UNITED STATES ATTORNEY
    Federal Bar No. CT 08083
    157 Church Street
    P.O. Box 1824
    New Haven, CT  06508
    (203) 821-3700

---

reasonable doubt, nor admitted by the defendant. See United States v. Siegelbaum, 2005 WL 196526 at *3 (D. Or. Jan. 26, 2005). The court noted that only if a defendant actually disputed the facts that resulted in the sentence enhancement, and the court decided the matter against him, can the defendant show that he may have been prejudiced by application of the wrong standard of proof and, to vacate a sentence enhancement on the basis of Blakely/Booker, when a defendant never disputed the facts upon which that enhancement was premised, would confer an unwarranted windfall.  Here, Caldwell not only did not object to the facts underlying his guideline range and/or the calculation of range itself as a career offender but, rather, stipulated to a guideline range of 151-188 months' imprisonment from which the Court, on his counsel's motion, *departed downward* to a term of 132 months' incarceration.

14

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing Government's Response was mailed, postage prepaid, this 2nd day of March, 2005, to David Caldwell (No. 14469-014), F.C.I. Otisville, P.O. Box 1000, Otisville, New York, 10963, and Alexander H. Schwartz, 3695 Post Road, P.O. Box 701, Southport, CT 06490.

_____
ANTHONY E. KAPLAN
ASSISTANT UNITED STATES ATTORNEY