# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID CALDWELL,<br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    Respondent. | CRIMINAL NO.<br>3:02cr54 (SRU) |

## RULING ON MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

On February 26, 2002, a grand jury returned an indictment charging David Caldwell, a/k/a Sketty, with one count of possession with intent to distribute cocaine base/crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). On April 18, 2002, Caldwell entered a guilty plea based on a plea agreement letter between Caldwell and the government dated April 17, 2002 ("Plea Agreement"). At the change of plea hearing ("Plea Hearing"), the details of the Plea Agreement, including the operation of the U.S. Sentencing Guidelines, were discussed. On April 9, 2003, I sentenced David Caldwell to 132 months in prison, followed by a three-year term of supervised release. The sentence of 132 months was a downward departure of approximately 19 months from the bottom of the Sentencing Guidelines range.[1] On June 7, 2004, Caldwell filed *pro se*, a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. In the petition, Caldwell claims that he entered a guilty plea without understanding the nature of the charge and consequences of the plea because his counsel was ineffective. In addition, he claims that he did not raise those issues in an appeal because his counsel did not file an appeal despite Caldwell's request that he do so.

---

[1] At the time of Caldwell's plea and sentencing, the Sentencing Guidelines were mandatory.

## I. Background

At the Plea Hearing, I conducted an extensive plea colloquy in which I discussed the Plea Agreement in detail with Caldwell. In particular, I asked Assistant U.S. Attorney Anthony Kaplan to summarize the important provisions of the letter to make sure that Caldwell understood the agreement. Kaplan reviewed the charge and the statutory maximum penalty of 20 years. April 18, 2002 Change of Plea Hr'g Tr. at 8 ("Plea Tr.") In addition, I reviewed the fact that, in the Plea Agreement, Caldwell was being classified as a "career offender." *Id*. at 17. I explained that, pursuant to the Sentencing Guidelines, such a classification would adversely affect Caldwell's Sentencing Guidelines calculation and result in a higher sentencing range. *Id*. Caldwell claimed to understand that, as a career offender, the sentencing range that would apply to him under the Sentencing Guidelines was 151 to 188 months in prison. *Id*. at 17-18. At the Plea Hearing, Caldwell's attorney, Alexander Schwartz, indicated that he would be filing a motion for a downward departure. *Id*. at 29.

## II. Caldwell's Section 2255 Motion is Untimely

Section 2255 provides a one-year period of limitation in which to bring a motion. The limitation period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the

>   Supreme Court and made retroactively applicable to cases on
>   collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented
>     could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

At the conclusion of Caldwell's sentencing proceeding, I reviewed with him his right to appeal as follows:

> THE COURT: . . . Mr. Caldwell, I'm required to advise you that you have a right to appeal. I want to note for you that in your plea agreement you waived the right to appeal or collaterally attack your sentence as long as it was within the guideline range. I think a reasonable reading of that plea agreement suggests that a sentence under the guideline range would be subject to be waived but if you believe that you have a right to appeal your sentence, I want to be sure you understand the following:
>
> Any Notice of Appeal needs to be filed within ten days of judgment and you should assume that judgment could enter as early as today.
>
> Do you understand your time limit on your right to file a Notice of Appeal?
>
> THE DEFENDANT: Yes.

April 9, 2003 Sentencing Tr. at 36.

Caldwell was sentenced on April 9, 2003, and Judgment of Conviction entered against Caldwell on April 10, 2003. Caldwell filed his habeas petition on June 7, 2004, more than one year after the date that his judgment of conviction became final. Because Caldwell did not appeal, his petition is time-barred.

Caldwell argues that the time period for filing an appeal should be tolled because he instructed his counsel to appeal, but his counsel did not do so. Attached to his declaration filed with this Court on February 11, 2005, Caldwell submitted a letter he wrote to his attorney, dated

April 2, 2004 (nearly one year after the sentencing), in which he inquired about the status of the appeal. Caldwell Decl., ex. A. In response to an order from this Court, Attorney Schwartz submitted an affidavit dated February 28, 2005. In his affidavit, Schwartz states that he never received a copy of Caldwell's letter. Schwartz Aff. at ¶ 6. He further states that immediately following the sentencing, he spoke to Caldwell about his right to appeal. *Id*. He advised Caldwell that he "did not see any extant appealable issues to be raised, particularly since the Court had granted his Motion for Downward Departure." *Id*. Nevertheless, Schwartz told Caldwell that he would file an appeal if Caldwell requested it, but was specifically told by Caldwell that he did not wish to appeal the sentence. *Id.* I need not resolve that factual dispute because, even assuming Caldwell instructed Schwartz to file a notice of appeal, and even if Caldwell raised the issues he claims his counsel should have raised, Caldwell's ineffective assistance of counsel claim is still without merit.

## III. Ineffective Assistance of Counsel

### A. The *Strickland* Standard

Caldwell claims that he was denied his Sixth Amendment right to counsel, which includes the right to constitutionally effective representation. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part analysis to determine whether a defendant was denied his Sixth Amendment right to counsel.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

The Court noted further that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Furthermore, the Court stated that "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. In making a determination about the effectiveness of counsel, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

Although the first prong requires inquiry into the performance of counsel, the second prong requires that the defendant meet "the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id*. at 696. A court need not make an inquiry into the performance of counsel, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id*. at 697.

### B. Lack of Sufficient Prejudice

For purposes of responding to Caldwell's claim that he was denied his Sixth Amendment right to counsel because of Schwartz's failure to file an appeal, I assume that Schwartz failed to properly file an appeal and that the waiver made by Caldwell in the Plea Agreement does not apply because his sentence was not within the guideline range. Caldwell's claim of ineffective assistance of counsel, however, can still be disposed of on the ground of lack of sufficient prejudice. As discussed below, even if an appeal had been timely filed, there were no

non-frivolous issues to appeal.  Furthermore, the sentence imposed would not have been affected by an appeal.

### 1. *Drug Quantity*

Caldwell claims that he could not have made a knowing and intelligent decision on how to plead because the Plea Agreement did not give notice of the drug quantity.  That claim is meritless because specific quantity was irrelevant to Caldwell's statutory penalties and Guidelines calculation.  Conviction under Title 21, United States Code, Section 841(a)(1), (b)(1)(C), the statutory provision to which Caldwell pled guilty, requires only that the government prove the defendant knowingly and intentionally possessed with intent to distribute any detectable amount of cocaine base.  *See* 21 U.S.C. § 841(b)(1)(C); *see also Avilez-La Guardia v. United States*, 46 Fed. Appx. 38, 39 (2d Cir. 2002) (summary order) ("Drug offenses under 21 U.S.C. § 846 are subject to sentencing under the graduated penalty provisions of 21 U.S.C. § 841(b).  If the offense involved any detectable quantity of cocaine, the offender is subject to a maximum prison term of 20 years.  21 U.S.C. § 841(b)(1)(C).").  There was no prejudice because Caldwell, by his own admission, knowingly and intentionally possessed a detectable amount of crack cocaine, which offense carries a statutory maximum penalty of 20 years.

In addition, the drug quantity did not affect Caldwell's then-mandatory Sentencing Guidelines calculation.  I calculated his sentencing range as follows.  Caldwell was a career offender.  Section 4B1.1(b)(C) of the Sentencing Guidelines mandates a base offense level of 32 for career offenders convicted of any crime with a statutory maximum of at least 20 but less than 25 years, regardless of attributable drug quantity.  Caldwell pled guilty to 21 U.S.C. § 841(a)(1),

(b)(1)(C), which carries a 20-year statutory maximum term of imprisonment, again, regardless of attributable drug quantity, so his base offense level was 32. Caldwell received a three-point reduction for acceptance of responsibility, and his criminal history category was calculated to be VI. Those calculations yielded a sentencing range of 155 to 188 months, from which I downwardly departed. Drug quantity played no role in calculating Caldwell's sentence. Caldwell's career offender status, not the quantity of drugs involved, determined his applicable sentence.

### 2. *Career Offender Status*

Caldwell claims that the Plea Agreement failed to notify him that he would be exposed to the Sentencing Guidelines computations applicable for career offenders. This claim is also meritless. The plea agreement itself is replete with references to Caldwell's career offender status. Moreover, during the Plea Hearing, I specifically discussed with Caldwell that the Plea Agreement classified him as a career offender, which affects both the offense level and the criminal history score, and results in a higher sentencing range. Plea Tr. at 17.

### 3. *Identity of Substance*

Caldwell also claims that there was no evidence that he possessed crack cocaine and that the Sentencing Guidelines range was calculated based on possession of crack. Again, these claims fail. "The DEA laboratory tested the substance purchased from Mr. Caldwell and determined it was cocaine base with a net weight of approximately 1.4 grams." Plea Tr. 24. In response to this statement by the government, the following dialogue took place:

> THE COURT: All right. Mr. Caldwell, is there anything Mr. Kaplan just said that you disagree with?

>THE DEFENDANT: No, sir.
>
>THE COURT: Okay. So you actually possessed some crack cocaine?
>
>THE DEFENDANT: Yes, sir. Yes, I did.
>
>THE COURT: And you knew it was crack cocaine?
>
>THE DEFENDANT: Yes

Plea Tr. 24-25.

### 4. Caldwell's *United States v. Booker* Argument

The fact that no appeal was filed, combined with the fact that the failure to appeal was not a result of ineffective counsel, negates Caldwell's argument that his petition should be granted in light of the decision in *United States v. Booker*, 543 U.S. 220 (2005). The ruling in *Booker* does not apply retroactively to cases, like Caldwell's case, that are on collateral review. *Id.* at 268. In *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Supreme Court stated that "[n]ew rules of procedure . . . generally do not apply retroactively." *Id.* at 352. The Court further stated that "we give retroactive effect to only a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (internal quotations omitted).

Furthermore, the *Booker* argument misses the mark. Caldwell argues that he pled guilty to distributing 1.4 grams of crack, and thus, his base offense level should be 18 under § 2D1.1(c), which, with a criminal history category of VI, should yield a Sentencing Guidelines range of 33-41 months. Caldwell argues that 41 months is thus his "statutory maximum," and that any sentence beyond 41 months implicates *Booker*. But for reasons already stated, Caldwell's proposed Guidelines calculation is incorrect. Moreover, Caldwell is confusing the Guidelines range with the statutory maximum to which he is subject under 21 U.S.C. Section 841(a). The

sentence I gave him was less than the statutory maximum and it was a downward departure from the applicable Sentencing Guidelines range. The failure to file an appeal was harmless. Finally, even assuming that the sentence had been properly appealed and was still pending when *Booker* was decided, upon remand I would have sentenced Caldwell to the same sentence.

### 5.	21 U.S.C. § 851 Does Not Apply

As stated earlier, during the plea colloquy, Caldwell was told that the maximum penalty that applied to him was 20 years. Plea Tr. at 8. The government did not seek to increase the statutory maximum under 21 U.S.C. § 841(b)(1)(C), based on prior conviction for a felony drug offense.[2] Caldwell's career offender status enhanced the Sentencing Guidelines range that applied to him; his prior convictions were not used to increase the statutory maximum. Because the government did not file a notice under 21 U.S.C. § 851, there was no statutory obligation for me to advise him that any challenge to a prior conviction must be made before sentence is imposed. *See* 21 U.S.C. § 851(b).

## IV.	Constitutionality of 21 U.S.C. § 841(a)(1)

Caldwell claims that Section 841(a)(1) does not contain an interstate commerce nexus. The Second Circuit has rejected that argument. *Proyect v. United States*, 101 F.3d 11, 13 (2d Cir. 1996). ("The nexus to interstate commerce . . . is determined by the class of activities regulated by the statute as a whole, not by the simple act for which an individual defendant is convicted.")

## V.	Conclusion

---

[2] 21 U.S.C. § 841(b)(1)(C) provides for a maximum term of 30 years for a violation of the statute after a prior conviction for a felony drug offense.

For the foregoing reasons, Caldwell's claims of ineffective counsel are without merit. Accordingly, his petition is time-barred. In addition, his claim that 21 U.S.C. § 841(a)(1) is unconstitutional also fails. Caldwell's motion to vacate his sentence is DENIED. The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 16th day of January 2008.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge